# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| **In re:**  <br>**Kristen N. Wissler,**  <br>  Debtor. | **Bankruptcy No. 04-36309**  <br>**Chapter 7** |

**MEMORANDUM DECISION AND ORDER DETERMINING AMOUNT OF ACTUAL AND PUNITIVE DAMAGES FOR VIOLATIONS OF THE AUTOMATIC STAY**

On July 20, 2005, the Court conducted a supplemental hearing on the Debtor's Motion to Hold Creditor in Contempt and Request for Sanctions Against Creditor First American Debt Solutions, Inc. for Violations of the Automatic Stay to determine the amount of actual and punitive damages in room 376, United States Courthouse, 350 South Main Street, Salt Lake City, Utah. Present at the hearing were Stephen M. Enderton, counsel for the Debtor, and the Debtor. First American Debt Solutions, Inc. ("First American"), after being called in open court, did not appear. Representations were made, testimony was given, and arguments were had thereupon. Based upon the same, and the court papers on file, the Court makes the following Memorandum

Decision, which will constitute its findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.[1]

## JURISDICTION

The Court has jurisdiction over the parties and subject matter of this contested matter under 28 U.S.C. § 1334. First American has been properly served and has received legal notice of all proceedings. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), and the Court has authority to enter a final order. Venue is proper in the Central Division of the District of Utah under 28 U.S.C. § 1409.

## FINDINGS

1. Notice was proper in this matter.

2. Prior to her bankruptcy, the Debtor entered into a contract with First American to consolidate and reduce her debts.

3. The Service Contract entered into by the Debtor and First American states that First American would withdraw $120 from the Debtor's checking account on the 7th of each month from August 2004 to September 2005.[2]

4. Debtor filed for bankruptcy protection on October 6, 2004.

---

[1] Incorporated into the Bankruptcy Code via Bankruptcy Rule 7052.

[2] Debtor's Exhibit 5.

2

5. That same day, the Debtor sent her representative at First American, Rick Bohnsack, notice of her bankruptcy via e-mail. In her letter, the Debtor specifically requested that First American discontinue making drafts on her checking account.[3]

6. In response, Kirk Kephart, another representative from First American, responded to the Debtor as follows: "I am sad to see when a client files bankruptcy. . . . Thank you for notifying us and I will send this to the accounting dept."[4]

7. First American withdrew $120 from the Debtor's checking account on October 7, 2004.

8. The Debtor again contacted First American on October 13, 2004 by email, when she discovered that First American had made the unauthorized withdrawal.[5]

9. Kirk Kephart responded again, thanking the Debtor for bringing this to his attention and stating: "I have already forwarded the email to the supervisor, and the accounting dept."[6]

10. First American did not refund the October withdrawal.

11. First American did not withdraw any money from the Debtor's checking account during November 2004.

12. First American did, however, withdraw $200.86 from the Debtor's checking account on December 7, 2004.

---

[3] Debtor's Exhibits 1 and 4.

[4] Debtor's Exhibit 1.

[5] Debtor's Exhibit 2.

[6] Id.

3

13. The Debtor once again contacted First American by email subsequent to the December withdrawal and informed them of the mistake and requested a refund of the full amount of the October and December debits.[7]

14. First American has not refunded the Debtor either withdrawals.

15. As a result of these unexpected deductions, several of the Debtor's checks did not clear her account and she was assessed overdraft fees, processing fees, and insufficient funds fees by her bank.[8]

16. The total amount of bank charges attributable to First Americans' unauthorized debits is $545.11.[9]

17. Due to the emotional stress of having her checks bounced and being callously ignored by First American, the Debtor developed back problems which required treatment by both her chiropractor and Dr. Robert Hood, a back specialist.

18. The chiropractor confirmed that her back problems were due to this recent stress.

19. The Debtor went to the chiropractor between 10 and 12 times, and saw Dr. Hood twice.

20. The medical and prescription expenses associated with these doctor's visits totaled $375.

21. The Debtor should be awarded $2,500 for her emotional distress.

22. In order to prevent First American from continuing to violate the automatic stay and to seek damages, the Debtor had to employ counsel to represent her in this matter.

---

[7] Debtor's Exhibit 3.

[8] Debtor's Exhibit 6.

[9] Debtor's Exhibit 6 lists additional charges, but the testimony was not sufficient to assess those to First American.

4

23.  The Debtor currently owes her bankruptcy counsel, Stephen Enderton, $2,707.58 for his fees and costs associated with this matter.

## CONCLUSION

The Court has previously ruled that First American violated the automatic stay.[10] Based upon the evidence presented, the Court concludes that actual and compensatory damages in the amount of $6,127.69 should be awarded to the Debtor. The actions of First American, in its lack of respect for the automatic stay, demonstrates a callous intent to trample all over Ms. Wissler's basic protections under the bankruptcy code. This conduct should not be condoned in any jurisdiction. Furthermore, based upon First American's clear violation of the automatic stay, and its lack of an effective response to the Debtor's pleas for relief, the Court believes that punitive damages should be awarded in this matter in the amount of $10,000.[11] Maybe this will, in some small way, have a chilling effect on future conduct.

Therefore damages will be awarded against First American Debt Solutions as follows:

A.  The Debtor is hereby **AWARDED $6,127.69** in actual damages.

---

[10] See Order and Judgment on Debtor's Motion to Hold Creditor in Contempt and Request for Sanctions against Creditor First American Debt Solutions, Inc. for Violations of the Automatic Stay, entered May 10, 2005.

[11] "The most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct. . . . courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 426 (U.S. 2003).

B. The Debtor is hereby **AWARDED $10,000** in punitive damages.

C. The **TOTAL AMOUNT AWARDED** to the Debtor, therefore, is **$16,127.69.**

**IT IS SO ORDERED.**

**DATED** this 28th day of July, 2005.

Tom R. Cornish
United States Bankruptcy Judge

6

__oo0Ooo__

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION AND ORDER DETERMINING AMOUNT OF ACTUAL AND PUNITIVE DAMAGES FOR VIOLATIONS OF THE AUTOMATIC STAY** will be effected through the Bankruptcy Noticing Center to each party listed below.

Kristen N Wissler
845 East Chariot Dr
Sandy, Ut 84094
   Debtor

Stephen M. Enderton
Bankruptcy Express
234 East 3900 South
Suite One
Salt Lake City, UT 84107
   Debtor's Attorney

Scott DeMoss, President
First American Debt Solutions, Inc.
5310 Harvest Hill Road
Dallas, TX 75230

National Business Incorporators, LLC
Registered Agent for First American Debt Solutions, Inc.
3305 West Spring Mountain Road
Suite 60-15
Las Vegas, NV 89102

First American Debt Solutions, Inc.
217 South Stemmons Freeway
Suite 211
Lewisville, TX 75067

R. Kimball Mosier
Parsons Kinghorn Harris
111 East Broadway
11th Floor
Salt Lake City, UT 84111
   Chapter 7 Trustee

United States Trustee
#9 Exchange Place
Suite 100
Salt Lake City, UT 84111-2147